**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RAYMOND LANE,

             Plaintiff,         Civil Action No. 05-73273

                                 DISTRICT JUDGE GERALD E. ROSEN
v.                               MAGISTRATE JUDGE R. STEVEN WHALEN

A. VALONE AND E. BELL,

             Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court are cross motions for summary judgment by Defendants A. Valone and E. Bell, filed January 3, 2006 [Docket #12], and Plaintiff, filed February 7, 2006 [Docket #17], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Plaintiff's motion for summary judgment be DENIED.[1] In addition, I recommend that Defendants' motion be DENIED in regard to the retaliation claims and GRANTED as to the right-of-access claim.

**I. FACTUAL BACKGROUND**

---

[1] Plaintiff's self-styled motion for summary judgment argues that Defendants are not entitled to qualified immunity and that a genuine issue of fact remains as to pertinent aspects of his claims. His motion is therefore construed as a response to Defendants' motion.

On August 24, 2005, Plaintiff, a state prisoner currently confined at Ryan Correctional Facility in Detroit, Michigan filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. He asserts that Defendant Bell, a prison librarian and Defendant Valone, a library technician, violated his First Amendment rights by denying his right of access to the courts and by retaliation

Plaintiff makes the following factual allegations. On May 17, 2004, Defendant Bell denied his request to photocopy exhibits accompanying some material he intended to send to the Secret Service Agency. *Complaint* at ¶5. Defendant Bell refused his request, stating that copying privileges were limited to court pleadings. *Id*. The next day, Plaintiff filed a grievance against Bell for violation of P.O. 05-03-115, which allows prisoners to copy legal material. *Id*. at ¶6.[2] On May 21, 2004 Plaintiff again asked Defendants Bell and Valone for permission to photocopy, informing Defendants that he required copies of his Petition for Certiorari and presenting the Petition for their inspection. *Id.* at ¶7. Defendant Bell informed Plaintiff that he would be denied access to the copier as a result of filing a grievance; Defendant Valone stated that he would not receive copies until the grievance was resolved. *Id*. The same day, Plaintiff filed a grievance against both Defendants for retaliation and right of access to the courts. *Id*. at ¶8.

On May 27, 2004, Plaintiff approached Defendant Valone, repeating his request to make copies of documents included in his petition to the Supreme Court; Valone then gave

---

[2]Plaintiff's grievance and other institutional records state that he was actually denied copying privileges and filed his grievance all on the same day - May 18, 2004.

Plaintiff "a direct order" to locate the court rule governing Supreme Court petitions. *Id*. at ¶9.  When Plaintiff informed Valone that he could not locate the rule, Valone, stating that Plaintiff had disobeyed a direct order by his failure to procure the rule, issued a major misconduct ticket. *Id.*  On June 4, 2004, Plaintiff presented Valone with a booklet issued by the Supreme Court which contained filing instructions for indigent litigants, indicating that the publication included filing deadlines and copying requirements. *Id*. at ¶10. Valone again denied Plaintiff's request to copy exhibits, stating that until the grievance was resolved, no copies would be issued. *Id*.  Plaintiff alleges that Defendants' multiple refusals to copy his petition denied him access to the courts.  In addition, he alleges the refusal to copy his documents and the major misconduct ticket issued by Defendant Valone amount to retaliation for the grievance he filed against Defendant Bell. *Id*. at ¶¶ 8, 12, 14.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. ANALYSIS

**A. Access to the Courts**

Defendants argue for dismissal of Plaintiff's access to the courts claim based on his failure to demonstrate that their actions prejudiced his litigation. *Defendants' Motion for Summary Judgment* at 9. Citing *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179 (1996), they contend that Plaintiff has not alleged actual injury to a criminal conviction, habeas corpus petition, or a civil rights action under 42 U.S.C. §1983. *Id.* Relying on *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir. 1983), Defendants also note that forbidding Plaintiff

to photocopy does not violate a constitutional right.

Prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered prejudice to his case as a result of the alleged denial. "In order to state a claim for interference with access to the courts a plaintiff must show actual injury.... '[T]he requirement that an inmate show actual injury derives from the constitutional principle of standing[ ]'." *Harbin-Bey v. Rutter* 420 F.3d 571, 578 (6th Cir.2005); *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey; Jackson v. Gill,* 92 Fed.Appx. 171, 173 (6th Cir.2004) (unpublished).

Pursuant to *Lewis,* Plaintiff's right of access claim flounders on the absence of any facts to indicate that his Supreme Court petition (or any other non-frivolous action) was prejudiced by Defendants' behavior. Plaintiff alleges that Bell and Valone repeatedly stymied his attempts to copy material required for his petition, but does not claim that their actions ultimately prevented him from pursuing his rights. A July, 2004 memo from the U.S.

Supreme Court states that Plaintiff's petition for writ of certiorari was returned to him as a result of filing errors, listing seven separate deficiencies contained in his submission. Significantly, the memo omits any statement to the effect that the petition was rejected on the basis that Plaintiff did not include a sufficient number of copies of any portion of the required material. *Plaintiff's Motion for Summary Judgment* at Exhibit.³  Further, even if Defendants' refusal to allow Plaintiff to copy his exhibits were the reason for the petition's rejection, the memo states that Plaintiff had up to 60 additional days to submit a corrected petition.

Plaintiff's failure to show (or even allege) that his petition was prejudiced by Defendants' actions mandates dismissal of this portion of his claim. However, I disagree with Defendants' characterization of the claim as simply asserting a non-existent "constitutional right to Xerox." *Jones, supra*, 697 F.2d at 803. Plaintiff's attempts to photocopy were made in pursuit of his constitutional right to access the courts. In *Siggers-El v. Barlow,* 412 F.3d 693, 699 (6th Cir. 2005), the court found that a prisoner engaged in protected conduct when he reported an officer who refused to authorize disbursements of

---

³Two of the deficiencies listed in the Supreme Court memo state that Plaintiff did not include a copy of either the appellate or district court decision. To the extent that these deficiencies could be construed to result from Plaintiff's lack of access to the copy machine, he still cannot demonstrate that his inability to copy his lower court opinions prejudiced his case. The memo indicates that the petition was also returned on the basis of five substantive omissions, such as his failure to present a concise statement of the case, the question presented for review, and the reasons relied on for allowance of the writ. Thus, independent grounds exist for the petition's rejection.

money from his prisoner account to his attorney. In rejecting the officer's argument that the prisoner's behavior was not protected, the court observed that his conduct was not "simply that of going over the Defendant's head in lodging a complaint. Rather, the Plaintiff's request to the Defendant's supervisor was a part of his attempt to access the courts." *Id.* In the present case, Plaintiff's photocopying efforts were also made in preparation of a court submission.

Likewise, I reject Defendants' argument that Plaintiff retained the option to create hand-made or carbon-copies of his documents. First, such an option would not address Plaintiff's need to recreate court-generated documents. Second, MDOC Policy Directive (PO) 05.03.115(I I) implicitly acknowledges inmates' need to photocopy legal material by stating in part that prisoners "may be required to present documentation (e.g., court rule, copy of the pleading) to show that *copies are necessary*." (emphasis added). This of course does not suggest that in and of itself, the policy directive implies a constitutional right to photocopy or that copy machine access should be unlimited. It does however indicate that pursuit of a court action regularly necessitates making photocopies. Similarly, forbidding a litigating prisoner copy machine access which leads to demonstrable prejudice in his case states a denial of access claim. However, in the present case, Plaintiff's constitutional claim falters on his inability demonstrate prejudice and is subject to dismissal.

### B. Retaliation

Defendants next argue that Plaintiff fails to state a claim of retaliation, citing non-retaliatory reasons for Plaintiff's major misconduct ticket and denial of copy machine access.

*Defendants' Motion for Summary Judgment* at 6. Defendants also contend that Plaintiff has not demonstrated that he engaged in constitutionally protected conduct prior to the issuance of a misconduct ticket.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Thaddeus-X* found that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."*Id.* 175 F.3d at 386. Further, "a claim of retaliation for exercise of the constitutional right of access is cognizable under § 1983." *Id.* The *Thaddeus-X* court noted that "[t]he law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional," noting that "for these wrongs, too, § 1983 provides a remedy." *Id.* The Court must therefore decide whether there is a genuine issue of material fact as to Plaintiff's retaliation claims.

### i. Protected Conduct

Plaintiff alleges that the retaliation occurred as a result of a grievance filed on May 18, 2004 against Defendant Bell on the basis that Bell had refused to allow him to photocopy

documents he intended to submit to the Secret Service Agency. *Complaint* at ¶6. The Sixth Circuit has held that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Bell v. Johnson,* 308 F.3d 594, 607 (6th Cir. 2002) *citing Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir.2000)(internal citations omitted). The right to file is protected only to the extent that the grievances are not frivolous. *Id.* However, the *Bell* court noted that the fact that the basis of the grievance was ultimately unsuccessful did not automatically render it "frivolous." *Id.*

Admittedly, Plaintiff's original grievance, if pursued, would likely have faced dismissal on the basis that Defendants justifiably refused his request to copy material that was not technically court-bound (see P.D. 05.03.115(I I)). However, other sections of the same policy directive suggest that photocopying services must be provided to indigent prisoners for a broader range of documents.[4] The subsection directly above the one relied upon by Defendants states that "[p]risoners who lack sufficient funds to pay for copies of *legal exhibits or other documents necessary for litigation* shall be loaned funds to pay for the copying." P.D.05.03.115(HH) (emphasis added). Thus, a grievant could make a non-frivolous argument that Defendants were violating the policy directive by denying him copy machine access required to submit documents to the Secret Service Agency as part of a larger effort to enforce his legal rights or obtain information needed to process an appeal.

---

[4]P.D. 05.03.115(I I) appears to allude only to the copying of material in preparation for court submission, stating that "[a] prisoner requesting a loan pursuant to Paragraph HH *may* be required to present documentation (e.g., court rule, copy of the pleading) to show that the copies are necessary." (emphasis added).

Plaintiff, in having pursued a plausibly non-frivolous grievance, has satisfied the first prong of the *Thaddeus-X* test.

### ii. Adverse Action

Unlike an independent right of access claim, a retaliation claim does not require a showing that the plaintiff was actually inhibited or deterred from pursuing a legal action. Rather, an "adverse action" is defined as one which "is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398. The question of whether an action is adverse is an objective one which does not depend upon how the particular plaintiff reacted. *Bell v. Johnson,* 308 F.3d 594, 606 (6th Cir. 2002). The *Thaddeus-X* court emphasized that "while certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions." *Thaddeus-X*, 175 F.3d at 398.

In *Brown v. Crowley* 312 F.3d 782, 789 (6th Cir. 2002), the court held that a major misconduct ticket, jeopardizing the accumulation of "good-time or disciplinary credits, effectively increasing the amount of remaining time that [the prisoner] was required to serve," could lead a reasonable jury to conclude that being subjected to the risk of severe sanctions would deter an individual of ordinary firmness from engaging in protected conduct. *Id.*; *Thaddeus-X,* 175 F.3d at 394.[5] The Sixth Circuit has continued to hold that issuing a

---

[5]The Court notes that the dissent in *Brown,* finding that the major misconduct ticket at issue received "prompt and favorable disposition," criticized the majority's application of

major misconduct ticket, in and of itself, constitutes an adverse action. *King v. Zamiara,* 150 Fed.Appx. 485, 493, 2005 WL 2496478, 8 (6th Cir. 2005)(unpublished) states flatly that "[c]harging an inmate with misconduct is an adverse action because serious consequence can flow from erroneous charges." While in the present case Defendants do not concede that the charge was "erroneous" (asserting instead that the ticket was dismissed based on its lack of timeliness rather than on its merits) the fact that the institution dismissed the ticket at least raises a question of fact as to whether the charges lacked merit.

Further, Exhibits C and D of Defendants' motion for summary judgment, which indicate that Plaintiff did not photocopy from May 14 until June 9, 2004 (during the period he was preparing a Supreme Court petition), lends credence to his position that aside from receiving a major misconduct ticket, Defendants attempted to meddle with his efforts to prepare his court pleadings in retaliation for filing a grievance against them. Plaintiff has satisfied the second prong of *Thaddeus-X*.

### iii. Causal Connection

---

an unlimited "risk-based theory of adverse action," asserting that 'adverse action' must amount to more than an "inchoate 'risk' of adverse consequences." 312 F.3d at 801 (Rosen, J., dissenting). Defendants continue to assert that the misconduct ticket was dismissed based on its lack of timeliness rather than on the merits. (*See Defendants' Motion for Summary Judgment* at 3: "[the misconduct ticket] was dismissed only because it was untimely written- not because it was untrue." A supplemental pleading by Defendants indicates that the May 27, 2004 ticket was dismissed on May 30, 2004 [Docket #23], but the Court is unable to determine when Plaintiff was actually informed of the dismissal. The factual and tempural relationship of the misconduct charge and denial of copier access to the grievance provides a much stronger inference of retaliatory motive than was the case in *Brown*, at subsection iii, *infra*. Of further significance is that Plaintiff likely prepared his June, 2004 Supreme Court petition under the shadow of the pending misconduct charge.

The third element of a retaliation claim is the showing of a causal connection between the protected conduct and the adverse action. *Thaddeus-X, supra*, 175 F.3d at 399. The subjective motivation of the defendants is material to this element. The plaintiff has the burden of establishing that his protected conduct (in the case, the filing of a grievance) was a motivating factor behind any harm. Once the plaintiff meets this burden, the burden of production shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the defendant can then show that he would have taken the same action in the absence of protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X*, at 399. The plaintiff does not have a heightened pleading requirement with regard to his initial showing of the defendant's motivation, but "it is obvious, of course, that bare allegations of malice would not suffice to establish a constitutional claim." *Crawford-El v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

On May 18, 2004, Plaintiff grieved Defendants Bell and Valone, referred to as "both librarians" in Grievance Identifier SRF-04-05-00552-14a, for having denied his request to photocopy. He alleges that Defendants informed him on May 21, 27, and June 4, 2004 that he would not be able to obtain photocopies until the grievance was resolved. As noted above, institutional records confirm that Plaintiff did not receive photocopies between May 14, and June 9, 2004. On May 27, 2004 Plaintiff received a major misconduct ticket from one of the very same individuals he grieved on May 18, 2004. Moreover, the grievance and the misconduct charge both pertain to Plaintiff's disputed copying privileges. Although

-12-

Defendants forward a purportedly non-retaliatory reason for issuing a ticket, as discussed above, the charges were never prosecuted. At the very least, the temporal proximity of these events raises legitimate questions of fact as to whether Defendants attempted to avenge Plaintiff's grievance against them by forbidding Plaintiff from copying legitimate court submissions and issuing a major misconduct ticket. Plaintiff has satisfied the third prong of *Thaddeus-X*.

### C. Qualified Immunity

For similar reasons, Defendants' argument that they are entitled to qualified immunity in the retaliation claim fails. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

In *Siggers-El, supra,* 412 F.3d at 699, the Sixth Circuit stated that "[a] reasonable officer would certainly know that the right to access the courts is clearly established and that an officer would be liable if he retaliated against a prisoner for pursuing his right to access

the court where the prisoner suffered an adverse action such that a reasonable person in the prisoner's position would be deterred from exercising his right," citing the oft-repeated and well-established principle that retaliating against a prisoner in response to his lawsuit filings states a constitutional violation. Likewise, as discussed above, a prisoner's right to file an non-frivolous grievance against prison staff is considered protected conduct. *See Bell, supra,* 308 F.3d at 607. Pursuant to *Thaddeus-X*, the right to be free from retaliation for engaging in protected conduct is clearly established. More specifically, in *Scott v. Churchill,* 377 F.3d 565, 572 (6th Cir. 2004), the court held that "Scott's right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights was clearly established, and [the defendant] is not entitled to qualified immunity." Significantly, while Defendants' motion discusses the theoretical grounds upon which a defendant can claim immunity, they do not argue that Plaintiff's retaliation claim fails to state a "clearly established right."

Likewise, as discussed above, a question of fact remains as to whether under the circumstances, Defendants actions were objectively unreasonable. Accordingly, Defendants' motion for dismissal on the basis of qualified immunity should be denied.

## IV. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's motion for summary judgment be DENIED. In addition, I recommend that Defendants' motion be DENIED in regard to the retaliation claims and GRANTED as to the right-of-access claim.

Any objections to this Report and Recommendation must be filed within ten (10) days

of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


          S/R. Steven Whalen
          R. STEVEN WHALEN
          UNITED STATES MAGISTRATE JUDGE

Dated:  June 27, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 27, 2006.

          S/G. Wilson
          Judicial Assistant