**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RAYMOND LANE,

        Plaintiff,        Civil Action No. 05-73273

                              DISTRICT JUDGE GERALD E. ROSEN
v.                            MAGISTRATE JUDGE R. STEVEN WHALEN

A. VALONE AND E. BELL,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is *Defendants' Motion for Summary Judgment* by Defendants Valone and Bell [Docket #45], filed on March 19, 2008 and *Plaintiff's Motion for Summary Judgment* [Docket #47], filed on April 17, 2008, which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendants' motion be GRANTED and Plaintiff's Motion DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On August 24, 2005, Plaintiff, a Michigan Department of Corrections ("MDOC") prisoner currently confined at the Carson City Correctional Facility in Carson City, Michigan filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that Defendant Bell, a prison librarian, and Defendant Valone, a library technician, violated the First Amendment by denying his right of access to the courts and by retaliation.

The Complaint contains the following factual allegations. On May 17, 2004, Defendant Bell denied Plaintiff's request to photocopy exhibits accompanying some material

he intended to send to the United States Secret Service, stating that copying privileges were limited to court pleadings.  *Complaint* at ¶5.   The next day, Plaintiff filed a grievance against Bell for violation of P.D. 05-03-115, which allows prisoners to copy legal material. *Id*. at ¶6.[1]  On May 21, 2004, Plaintiff asked Defendants Bell and Valone for permission to photocopy, informing them that he required copies of his Petition for Writ of Certiorari, and presenting the Petition for their inspection. *Id.* at ¶7.  In his Complaint, Plaintiff alleges that Defendant Bell informed him that he would be denied access to the copier as a result of filing a grievance, and that Defendant Valone stated that he would not receive copies until the grievance was resolved.  *Id*.   The same day, Plaintiff filed a grievance against both Defendants for retaliation and right of access to the courts.  *Id*. at ¶8.

On May 27, 2004, Plaintiff approached Defendant Valone, repeating his request to make copies of documents included in his petition to the Supreme Court. Valone then gave Plaintiff "a direct order" to locate the court rule governing Supreme Court petitions.  *Id*. at ¶9.  When Plaintiff informed Valone that he could not locate the rule, Valone, stating that Plaintiff had disobeyed a direct order by his failure to procure the rule, issued a major misconduct ticket.  *Id.*   On June 4, 2004, Plaintiff presented Valone with a booklet issued by the Supreme Court which contained filing instructions for indigent litigants, stating that the publication included filing deadlines and copying requirements.  *Id*. at ¶10. Valone again denied Plaintiff's request to copy exhibits, stating that until the grievance was resolved, no copies would be issued.  *Id*.

Plaintiff alleges that Defendants' refusals to copy his petition denied him access to the courts.  In addition, he alleges that the refusal to copy his documents and the major

---

[1] Plaintiff's grievance and other institutional records state that he was actually denied copying privileges and filed his grievance all on the same day - May 18, 2004.

-2-

misconduct ticket issued by Defendant Valone were in retaliation for the grievance he filed against Defendant Bell. *Id*. at ¶¶ 8, 12, 14.

On September 29, 2006, the district court dismissed all of Plaintiff's access to the court claims, as well as the retaliation claim as it pertained to copying documents for submission to the Secret Service [Docket #30]. The district court denied summary judgment as to the remainder of the retaliation claims. *Id.* On August 30, 2007, the district court denied Plaintiff's motion for partial summary judgment [Docket #33, 41].

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.  ANALYSIS

Defendants premise their renewed motion for summary judgment on "clarification of Plaintiff's claim obtained through discovery." *Defendants' Brief, Docket #45* at 2. Citing Plaintiff's deposition testimony, Defendants reiterate that initially, Bell refused Plaintiff

copying privileges based on the fact that they "were not being sent to a party in a lawsuit and they were not court documents." *Id.* at 2, Exhibit 1 at pg. 11. Defendants note that Bell's initial refusal to allow Plaintiff to copy was consistent with MDOC Policy Directive 05.03.115, ¶GG, which states that "[p]risoners shall be provided photocopying services to obtain copies of items needed for legal research and other *necessary legal material to be filed with a court or served on a party to a lawsuit.*" *Id.,* Exhibit 2 (emphasis added). Bell denies that his subsequent refusal to allow Plaintiff to copy was in retaliation for the grievance Plaintiff filed against him, but rather was likewise based on the Policy Directive's prohibition on copying material not related to lawsuit or court documents. *Defendants' Brief* at 2. Although Plaintiff claims that the documents that he sought to copy were to be attached to a writ of certiorari (a legitimate reason for copying), Plaintiff has acknowledged that they were "the exact same documents that he had originally wanted to send to the Secret Service." *Id.* As such, Bell contends that he refused the copy requests on the assumption that Plaintiff was again attempting a Secret Service mailing *Id.* Denying any retaliatory motive, Defendants argue that they refused Plaintiff's subsequent copy requests in the expectation that the Step I grievance response would resolve the policy dispute. *Defendants' Brief* at 4-5. Bell's position is supported by Plaintiff's acknowledgment that Bell mistakenly believed that the later copying requests pertained to Secret Service submissions. *Docket #45,* Exhibit 1 at pg. 15.

Defendants also contend that Bell's request that Plaintiff show him "a court rule" supporting the need for copies was supported by Policy Directive 05.03.115 ¶HH, which allows an officer to request "documentation" supporting the need for copies. *Id.* at 3, *Docket #45,* Exhibit 2. Defendants argue that the misconduct ticket issued by Valone (and later dismissed) was the result of Plaintiff's refusal to obey Valone's direct order. *Id.,* Exhibit 1,

pg. 13.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." On June 26, 2006, this Court made the following finding:

> "On May 27, 2004, Plaintiff received a major misconduct ticket from one of the very same individuals he grieved on May 18, 2004. Moreover, the grievance and the misconduct charge both pertain to Plaintiff's disputed copying privileges. Although Defendants forward a purportedly non-retaliatory reason for issuing a ticket, as discussed above, the charges were never prosecuted. At the very least, the temporal proximity of these events raises legitimate questions of fact as to whether Defendants attempted to avenge Plaintiff's grievance against them by forbidding Plaintiff from copying legitimate court submissions and issuing a major misconduct ticket."

*Docket #24* at 12-13. *Thaddeus-X*, 175 F.3d 378, 394 (6th Cir. 1999).

Because I found that the temporal proximity of the grievance and Defendants' refusal to extend copying privileges and the misconduct ticket raised an inference of retaliation, Plaintiff's claim survived Defendants' first motion for summary judgment. However, this was before any significant discovery took place. Now, Plaintiff's own deposition testimony, along with the misconduct ticket, shows non-retaliatory motives for Defendants' refusal to allow copying privileges pending the resolution of the grievance, as well as legitimate reasons for the issuing the misconduct ticket. In view of this additional countervailing evidence, the mere temporal proximity of the grievance and the ticket, with nothing more, is insufficient to overcome summary judgment. On these facts, no trier of fact could reasonably find for the Plaintiff. *Anderson v. Liberty Lobby, supra*.

However, even assuming that the facts might otherwise support a retaliation theory, the Defendants would be entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  There are generally two inquiries in a qualified immunity analysis:  (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).[2]  Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

At the time of the events in question, it was clearly established that in general, an inmate had the right to be free from retaliation for exercising constitutionally protected conduct. *See Thaddeus-X, supra*.  However, it was also "clearly established" that a prison inmate's constitutionally protected rights must be balanced against the institution's need to maintain security and order within the prison.  In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that  prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern. In the context of the present case, the salient question is not whether the Defendants should have known in the general sense that they were not permitted to

---

[2] In *Pearson v. Callahan*, __ S.Ct. __, slip op. at 17, 2009 WL 128768 (2009), the Supreme Court held that the sequential two-part test set forth in *Saucier* is no longer mandatory.

-6-

retaliate against the Plaintiff, but whether they should have known that their discretionary enforcement of long-standing Policy Directives, and their decision to delay Plaintiff's request for copying pending resolution of his grievance, violated any clearly established rights.  As the Defendants point out in their motion, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 532 U.S. at 202 (emphasis added).

To determine whether a constitutional right is "clearly established," a reviewing court looks first to decisions of the United States Supreme Court, then to its own decisions and those of other courts within the circuit, and finally, to decisions of other circuits. *Williams v. Kentucky,* 24 F.3d 1526, 1533 (6th Cir.1994).   I have found no case law to the effect that the Policy Directives at issue are unconstitutional or unreasonable under *Turner*.  I therefore cannot find that the Defendants violated any clearly established rights "in the situation [they] confronted."[3]  Because neither their good faith reliance on a Policy Directive nor the issuance of a misconduct ticket for the failure to obey a direct order are "clearly established" violations of constitutional law, dismissal on the basis of qualified immunity is appropriate.

At most, the evidence would support a finding that the Defendants were mistaken in their belief that Plaintiff's request for copying was proscribed by the Policy Directive. However, "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter*

---

[3] The Sixth Circuit has described a "third prong" of the qualified immunity analysis:  has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable? *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002).  In this case, the Defendants' enforcement of the Policy Directives, and their decision to await the outcome of Plaintiff's grievance (which was ultimately resolved), were objectively reasonable.

*v. Bryant,* 502 U.S. 224, 229 (1991) *(per curiam)* (internal quotation marks omitted); *Dorsey v. Barber,* 517 F.3d 389, 400 (6th Cir.2008).

### IV. CONCLUSION

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment [Docket #45] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #47] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: February 18, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 18, 2009.

                                                s/Susan Jefferson
                                                Case Manager